310-0427 James Lessen, Delores Lessen, Appellant Paul Perrona v. Williamsville State Bank, et al., Hanna County & Ferrandi, Appellee Irving Mashing, and Susan Bates Mr. Perrona Thank you, Your Honor  Mr. Perrona I represent James and Delores Lessen in this case which involves the surface water drainage of a farm that they own. They own a 160-acre square piece. The 160-acre piece is bordered on the north by Stonewall Road and it's bisected in the middle by Reddick Road. There's an East 80 and there's a West 80. If you will look on the page after page 5 of our original brief, you can see I put the outline in yellow, the 160-acre tract, and at the top you can see Stonewall and in the middle you can see Reddick. In the hearing that we held, it was determined that all of the drainage from this 160-acre tract goes to the north. It goes towards the Mizan River. That is the natural drainage course. Besides the drainage of the Lessen property, there's a large watershed south of the Lessen property which drains through the Lessen property. Part of it drains through the West 80, part of it drains through the East 80. When we filed our original complaint, the drainage of the full 160 was blocked by the north ditch of Stonewall Road which ran on the north side of the property. The water then ran either east and west in ditches, but it backed up into the property of the Blessens. That was the original thrust of the complaint. The County of Grundy maintains the ditches. They maintain the ditches on Reddick Road. They maintain the ditches on Stonewall Road. Our original complaint, we requested that the natural drainage course be re-established across the Stonewall Road, underneath Stonewall Road, to take out the blockage that was on the north ditch of Stonewall, and then put a swale in across the Donanville property. The Donanville family owned the farm which was just north of the Lessen property. Again, if you look at that plat book drawing, you can see the location of the two farms. I brought along what I think is a visual aid for the court, because this is a little bit confusing, and I put it on the clerk's desk there. I would ask that we give each one of you a copy of this visual aid for you to see and kind of follow where this drainage goes, if that's okay. Is that the same visual that's in the brief? No. Have you provided that to a closing counsel? Yes. Any problem with us looking at that? I would object to the proofs that are in. This is just additional proof that it's appropriate for the court to require this. I don't think it's appropriate. Well, I'll tell you what. We'll look at it and take it for what it is, and that is just a demonstrative thing for purpose of oral argument, if you think that will give us some help. I don't think it will hurt anything, and we'll hand it back to you when you're done here today. Okay. Do you want to look at it now, or did you just want me to explain it? You can just explain it. Okay. In this little drawing, it shows Stonewall Road, it shows the property to the north, and it shows a square below Stonewall that is the Blessing property. The drainage on this Blessing property is kind of like a wishbone, and Engineer Sarver, who testified, said that if we establish the natural drainage course for the west side, which is what we're involved with here, the water, the surface water would drain about 700 feet south of Stonewall Road. The Reddick Road bisects the property of the Blessings. It's half a mile, so it's 2,600 and some odd feet. So what we've got is on the east side of Reddick Road, we've got kind of a curve, and then it goes up across Stonewall to the Donville property. On the west side, we've got, it curves to the east, the natural drainage course, underneath Reddick Road, and then proceeds north through the same culverts that go across the Donville property. Now, after the previous appeal that was in this case, a settlement was finally reached, and it was agreed that the north ditch would be reduced in height, and a swale would be put in on the Donville property. So now it was reestablished, the natural drainage course, for the east 80. Part of the agreement, that took care of the east 80 and prevented the ponding of water in the east 80 that was ruining some of their crops. But in regard to the west 80, the agreement provided that the plaintiffs could request a culvert underneath Reddick Road, because when Reddick Road was installed originally, that area where the natural drainage course occurred, 700 feet south of Stonewall, was blocked, completely blocked. And in his testimony, Engineer Sarver indicated that because of that, there's a ponding that occurs at this area where the natural drainage course from the west 80 would naturally go under Reddick, and also there's some ponding in the northeast corner of that west 80. It's easier to see on the map, but the restriction in regard to the installation of the culvert was that it had to not change the direction, volume, or flow of the surface water. It had to remain the same. Now, we filed a motion back at the end of 2008 to compel the construction of this culvert, and it was a five foot by two and a half foot culvert that we were requesting. That is what Engineer Sarver indicated was necessary to get the volume of water that would normally have gone in the natural drainage across Reddick. The defendants refused, and a hearing was held. The hearing was held on April 30th of 2010. At the hearing, Engineer Sarver testified that the installation of the culvert would not increase the amount of washed surface water going across Stonewall and Donovanville's property if you consider the natural drainage course. That was the point of our original complaint, was to restore the natural drainage course. On the contrary, Judge Doherty ruled in the trial court that the agreement had to be interpreted to mean the topography as it exists now with the impediment of Reddick Road. Now, that ruling, in our opinion, doesn't make sense because any culvert under Reddick Road would change the direction of the flow of the water. Otherwise, there's no point in putting the culvert in. The volume of water has to increase because across Stonewall, because of the natural drainage, that's where it went. It went across Stonewall. The only logical interpretation of that provision is that there's no change to be made in the natural drainage course as opposed to the way it is today. The parties in our briefs, we've all agreed that this settlement agreement was a contract between two parties. It's subject to judicial interpretation, and this court is deciding the issue of Donovanville. I cited Corbin in our brief, and Corbin says there's two things to assist you in regard to your determination. You determine the intention of the parties, and you take the agreement as a whole. Now, our position is that the agreement as a whole, if you look at it, you read it, it's in the briefs. It created a reestablishment of the natural drainage course. That was the purpose of it. That was the reason for it. That was what we were doing in the original complaint, requesting that. The intention of the parties was to create a right to drain that West 80 by this culvert. Now, there's no other reason to have a culvert unless you're going to drain something. If you follow Judge Dougherty's thinking, we have a right without a remedy. It's impossible to put a culvert in that doesn't change the direction flow as it exists today. Well, in fairness to Judge Dougherty, he didn't write this contract. Right, and the contract has an omission. It does not state whether it's to be the natural drainage course or whether it's to be the state as it is today. Go ahead. Is there a problem with the drainage the way it is today? Yes. In the testimony of Engineer Sarver, and I'm not sure if Mr. Blesson testified, but it ponds where the natural drainage course would cross Reddick Road. That's 700 feet south. It ponds a lot? It doesn't pond a lot. It ponds sufficient at times to knock out some of their crop. It also ponds somewhat in the northeast corner of that West 80. And the culvert would take care of both of those pondings? Yes. Does it pond in the swale that the parties approved would be put in that location? I'm sorry? There's a swale. The settlement agreement provided for a swale. Yes. Does it pond in the swale? No. That swale in the original agreement was on the Donville property. It's north of Stonewall. Where we're talking about is, that's why it's easier to see it if you can see it on the drainage, but it's on the 80 west of Reddick Road. Following up with Justice Schmidt's question, this agreement was drafted by the parties and it uses the present tense, water emanating from or flowing across, not water that naturally emanated from. What significance does the present tense and the verbiage have to your argument? I don't know that that was considered. I can only tell you that the whole thrust of this case, from complaint to end, was to reestablish the natural drainage course across it. That's what we asked for. That's what the agreement, if you look at that agreement, it basically discusses, I believe there is somewhere in there that discussed it as part of the agreement. Counsel, that's two minutes. I don't have any comment on your question. I'm sorry. Otherwise, we're requesting that the trial court be reversed and the cause remanded in order to compel the installation of that culvert and reestablish the natural drainage course. Thank you for your consideration. Thank you, Mr. Perrona. Mr. Massey, are you going first? Yes, Your Honor. May it please the Court, Mr. Perrona and the Assistant State's Attorney, please. First of all, Your Honor, I would like to tell and explain to the Court what this case is really about. This started as a drainage case, but this is now a contract case. It has nothing to do with the ultimate result of this case as far as for what the Court should be considering today.  If the Court will look at the amended complaint and also the original complaint that's filed by the appellate in this case, their specific focus was on the drainage of water that went under Stonewall Road from the appellate's property, which is south of Stonewall Road, Stonewall Road being an east and west road, that would flow then through culverts and then on to the property owned by my client, the Donnevilles. The specific allegations in paragraphs 13, 14, and 15 of their amended complaint, and it was numbered slightly different in the original complaint, but it's that there was a blockage at that point and the water was not allowed to flow across or under Stonewall Road and then across the Donneville property. The agreement as entered into and approved by the Court specifically dealt with how that was going to be remedied. It went into seven and a half pages approximately of detail as to how the various levels is going to be maintained. It went into what each party had to do. It went into remedial action if the surface increased in height. It called for a monument to be put there to indicate what the elevation is so that in the future, if some party felt that the agreement was not being maintained, there was a marker there, a standard by which to measure against the agreement. That was all put in. That was all done. The issue with respect to the culvert under Reddick Road is basically was put in, asked for by the appellants after the agreement had been drafted, and indicated that they would like to have the right to put a culvert under Reddick Road. We had already made the agreement, and the issue at that time was, okay, you can put a culvert under Reddick Road as long as it doesn't change anything. Why would you put a culvert that didn't change anything? Well, there's testimony in the record by Mr. Sarver, their engineer, that water could, he never observed it, but he felt from his calculations that water could come over Reddick Road. You could put a culvert in such a location so that if the water came to that point, it would go through a culvert rather than over the road to protect the road. There's also testimony that there is a culvert, actually two culverts, under Reddick Road at the intersection of Reddick Road and Stonewall Road, Reddick Road being a north-south road that intersects into Stonewall Road, that if the Mazan River rose in flood stage, the water backflows through there. And I suppose if it went high enough, it could backflow through an additional culvert to take the pressure off. So there is some basis for putting a culvert in that does not change the direction, flow, or volume of the property, or the water. This is a county road, isn't it? Yes, it is. Okay, so the county's got the authority, whether the two landowners agree or not, if their road's getting flooded, they can... But the county was also... Right, and the county could do that, but the county was in the situation where it did not want to increase any additional water downstream that the county, again, could be sued by for somebody else because perhaps somebody else was then flooded with water. The issue is, here, is that the parties, after 20 years of litigation, entered into an agreement, a contract that was approved by the court, each party represented by counsel. The plain language of the agreement says that a culvert can be put under Reddick Road if certain criteria are met. That's the agreement. And it doesn't say... And if the language, as far as for direction and flow, has no meaning, then why not just say you can put a culvert under Reddick Road? It was specific, based on the agreement of the parties at the time, before this additional matter was thrown on top of the pile, that we wanted to put a culvert under there. We said, okay, you can put a culvert under there, but as long as it doesn't change anything, because we are changing the rest of it to accommodate you. In the complaint, there was nothing ever said about Reddick Road. The question regarding drainage, regarding Reddick Road, only came up in testimony as to whether or not the culvert that they proposed to put under Reddick Road would change the direction or flow or volume of the water. That testimony was after the agreement was entered into. It has no relevance, as far as for the agreement. The agreement is a contract between the parties, and it's based on what was existing at the time, what was existing at the time, was an alleged blockage at Stonewall Road, under the culverts, onto the Diamondville property. There was never any allegation of any blockage by Reddick Road. And in fact, Mr. Blesson testified that he lived there for 73 years. Reddick Road has always been in the same condition, although he said it may have been raised, but he never remembered any water going over Reddick Road. Mr. Sarger indicated that his calculations indicated that water might have gone over Reddick Road, or it could, but he never observed it. And his testimony also is that the current watershed brings water down the west side of Reddick Road to the Bezan River. When specifically asked of Mr. Sarger whether or not this would change the direction, flow, or volume of the water if a culvert was put in, his answer was yes. That's the agreement. And so throwing in the issue again of whether or not there is right to natural drainage, or whatever you want to call it, is not part of the agreement. It has already been set. And by putting in language regarding the culvert under Reddick Road, I think that is the agreement. You can put a culvert in if it hits its criteria. And that's the criteria that was set, based on the bargain of the parties. And that's where it is. Counsel for Appellate has argued his case without using the word ambiguous. Do you think there's an ambiguity in the settlement agreement? No. All of the issues were based on what was currently happening out there. The current blockage that they alleged was on Stonewall Road. That's what they were alleging. The issue as far as for what had to be done in the profile area that is called under the agreement, was currently what is going to have to be done. And it stands in the future what will be done to implement this and to keep it in the same manner in the future. That's what we're talking about. We're talking about the here and now. We're not talking about something that happened 100 years ago. Do you attach any significance to the verbiage used in the present tense emanating from or flowing across? Well, sure. It's saying that as long as it doesn't change what is currently happening. I mean, it's very simple. It doesn't change it. And I think Mr. Proma's argument is that your argument is this contract means you can only put a culvert in if it doesn't do anything. No. And he's kind of an absurd construction to say somebody's going to go out and culverts aren't free and somebody's going to go out and put a culvert in for aesthetics when it doesn't do anything. Then what is the reason for the language that restricts it? If it was just they have a right to put a culvert in, you put a culvert in. You don't say if it doesn't do this, this or that. There was restrictions to it. And in the context of when that was put in, the agreement had already been struck by the parties that we were going to take care of the alleged obstructions and everything and do all the work on Stonewall Road on the Donovanville property and then this was something that was added to it. We said as long as it doesn't change what we're doing now, we'll be going along with that. And if you look at the testimony from their engineer as to what this culvert could do, because if water did come over Reddick Road, put in a certain position, it could keep the water from coming over Stonewall Road, leaving it go through the culvert rather than over the road according to the testimony of their engineer, Carter Sarver, as to the water backing through the culverts that are at the intersection of Reddick Road and Stonewall Road. Same thing. It could act as a relief valve and not change the direction, volume, or flow. So I think there is some... Even if it's a relief valve during heavy waters, it's going to change the direction of the flow and it'll keep it from coming over the road at the intersection of Stonewall and Reddick Road. Was Sarver proposing one culvert, a culvert, as used in the settlement agreement or multiple culverts? Well, he started out with one culvert and then he said he wanted five. And then when we objected to five, he said I want one big one. But the issue is not the size of the culvert. It has to meet certain criteria. That criteria is spelled out in the agreement. Very simple, plain and simple. I think that that's what it has to meet. And that's what Judge Daugherty found. It did not meet it. And their expert witness, Carter Sarver, as well as our expert witness, found that it didn't meet it and therefore was denied. Anything else? Questions? Thank you. Ms. Bates. May it please the Court, Susan Bates, Assistant State's Attorney for the County of Grundy. Mr. Crowley, Mr. Mashing. We agree with the Dondonvilles as stated, what has been stated here by Mr. Mashing. This is an agreement that was bargained for. The Blessings bargained hard for this agreement. There was no additional complaint and they wanted something on Reddick Road. So that was a condition that they put in after the fact. The county's concern consistently has been that if this culvert was too large, that it would create too much water downstream and we would be faced with additional lawsuits because of this new water that would be placed onto these downstream properties. Not only the Dondonvilles but people beyond the Dondonvilles because this water flows north. And when we originally bargained, our understanding was that we were talking about a small culvert. But as has been pointed out, when the plaintiffs, when they came to the county, they asked for five 24-inch culverts. And then when they, when the court clarified that they only got one culvert, then they went to a huge box culvert, five feet by two and a half feet. That's a huge amount of water that could flow through there. The county had never anticipated that size of a culvert would be put in here. And I would argue that if there is any ambiguity in this situation, it has been created by the Blessons when they came in and asked for five culverts instead of one culvert. And when their expert clarified for us at the hearing that natural drainage to them meant before Reddick Road was there and before there was farming. I mean, we were dealing with an issue that is a current problem in time. The county has been dealing with drainage issues here since 1983. And we were hoping that this would resolve our drainage issues. And so we agreed that we could put in one culvert. We anticipated a small culvert. The county stands ready to put in a small culvert. But to put in a box culvert that is five feet by two and a half feet that would create problems not only for the Dondonvilles but for the properties beyond the Dondonvilles opens the county up to a whole array of new lawsuits. I mean, it's not just north of the Dondonvilles that have come to the county about drainage issues. Adding this type of water, it's exactly what the language that was put in there by the county was put in there to prevent. We don't want to be fighting about water here forever. We would like to be able to resolve the water issues. But this, if allowed, what's the difference between a big five-foot box culvert versus a... I think for the county it is. We've always been willing to put in a 24-inch culvert. But a five-foot box culvert, you're talking about a river flowing down there. I mean, that's a huge amount of water and this is a very, very flat area. The Mazan Creek is very close by. I mean, it's a potential... It opens up a whole array of problems, I think, for the county if we were to say, okay, you can put this huge culvert in. Because then we would be in a position of having to respond to the neighbors beyond as to why all of a sudden they were getting additional water that they do not get today. Today the water flows down on the West 80. It flows down the ditch. It does not request the Mazan River. It does not go east and through the Stonewall Road thing. But if we put a five-foot box culvert under, it's all going to flow down the east side and it's all going to go through the Stonewall Road ditches. That was never what we had anticipated. So we would ask that you uphold the lower court and deny the appellant's request. Thank you. Thank you, Ms. Bates. Mr. Perlman, do you have some rebuttal? I think counsel just said and just exemplified the need for the culvert when she says that the county has always been willing to put in a 24-inch culvert. We have testimony that the need is the box culvert. They gave a lot of comments which were extraneous to any evidence that's in the record. I mean, how long this case has gone on, what the property owners north of Donneville are affected, that's never been in any part of any evidence in regard to this issue. Well, it seems a little unusual. I mean, what's at issue here is a five-foot box culvert. I mean, you push an awful lot of water through a five-foot culvert, and you push a lot of water through a 24-inch culvert. But if a five-foot culvert's what's needed, it just seems unusual that it wasn't part of the original complaint. Well, let me explain that about the original complaint. The property, everything was blocked by that deal on Stonewall Road. That was the thrust of the complaint, to get that unblocked. We were not, and we admit that in that original complaint, we were not as concerned about the West 80 as we were about the East 80, because the East 80 had probably 15 to 20 acres of that 80 was ponded on a consistent basis. And that was the reason why the thrust of the whole case was to get rid of that problem on, across Stonewall Road and get that down so that that drained. The West 80 does not have the same significance as the East 80 did. The size of the culvert, I don't know, the engineer testified, Sarver, that I think it was four smaller ones would work better than the one big one. But when they relied on the agreement, which provided for one, that was what he came up with to carry the same cubic volume of water that was going to go through there. I don't know, but going back through all, the agreement stands on its own. So what we're saying is that the rest of this stuff is somewhat extraneous. Sarver's testimony was pretty simple. If you kept it as it is and you considered the matter as it presently is, then you would never have, I mean, there would always be a change in direction, volume, and amount of water. If you considered the natural drainage course, then yes, you would need a culvert of the size that he is talking about. It wouldn't be necessary very often, but that's the way it was and that was the purpose, the intent of the agreement. The agreement, I mean, counsel is going back into what we're negotiating during the time of the agreement. The agreement stands in itself. Everything deals on the agreement and I don't think that is any consideration whether or not the Reddick Road culvert was at the end of the negotiations or was at the beginning of the negotiations. Well, the settlement agreement itself provides that the settlement was to provide compensatory damages, punitive damages, resulting from adjustments to the man-made ditch on the north side of Stonewall Road north of the existing culverts. Correct. So the Reddick Road culvert, we don't need that extremist evidence. It should be in the amended complaint. That's correct. It was when we were negotiating the final, and we're going to go into negotiations, we're going into the negotiations of the final agreement. That was an additional part of the agreement that we felt was necessary to drain the whole parcel of the 160 acres. That was the purpose of it. One minute. I do not mean to represent to the court that the main thrust of this contract, the main thrust of this case was to open up that north side of Stonewall Road. And the settlement agreement provided for that and got it done. You're right. You're not enforcing those conditions. No. That is, we have other ability to enforce that and that's not a part of this situation that we're here today. The sole issue is whether or not we're entitled to the culvert under Reddick Road. And that's what we're advocating. The culvert under Reddick Road as proposed by Sarver's testimony before the court. Yes. We have to understand this. And I think Counsel is kind of confusing this situation. The only testimony we ever had in this thing was on this issue, the Reddick Road issue. The rest was negotiated between the parties. So, yes. Would there be anything to preclude you from seeking to enforce this agreement at a later point in time with a smaller culvert? No. There would be nothing to it other than litigation should end at some point in time. And that's what he said. Sarver has been consistently the individual that has testified and I think honestly, I think the other side would agree to that that he has always honestly testified in this case. So. Do you know how many acres of that 80 that we're talking about that's affected is flooded sometimes? No, there was never any testimony to that. He just said that there was an area that was flooded but there was never a testimony of a specific number. One of the reasons for that was that he never testified that as he had never been out and never observed it at the time. The trouble with all this drainage stuff is that it occurs at a particular point in time and you've got to be there because, you know, three, four, five days later it's gone. And so. Well, I understand but you could, I mean, your clients could say excuse me, testify that well, gee, one year we lost half an acre or two acres or three acres or 10 acres on a routine, whatever is being affected by this water backing up. It seems to me that you wouldn't have to, you see the result and you see my corn's not growing or my bean's not growing because there's too much water. I do not remember that being testified to. I apologize for that. All right.   Thank you. All right. And thank you all for your arguments here today. This matter will be taken under advisement of the Attorney General of the United States  Thank you.